Hello, everyone. Thank you for convening remotely today. This is Judge Menashe. I'm here with my colleague, Judge Sack, and Judge Kaplan of the Southern District, who's sitting with us by designation. Today, we have four cases on the calendar, one of which, 1938-34, United States v. Khan, is going to be taken on submission. I understand that in the third case, United and that is fine. So, we will have three minutes of rebuttal time for each of the cross-appellants, and we'll get to that when we get to it on the calendar. The first case for which we'll hear argument today is 2010-99, Smalls v. Collins. Mr. Rudin. Thank you, Your Honor. Good morning. May it please the Court. In Hickory-Humphrey, the court established a limited exception to Section 1983 liability, that an unfair conviction claim doesn't accrue unless the conviction already has been vacated or reversed, in which case it should be allowed to proceed. This long ago became known as the Heck favorable termination requirement. While analogizing to malicious prosecution, the court did not require an indication of innocence as a prerequisite to an unfair trial claim. Following Heck and Rusciuti v. City of New York, and in many other decisions through the Frost case as recently as this past November, this court has continually reaffirmed that what the Rusciuti Court referred to as the unconscionable act of fabricating evidence is redressable regardless of whether there otherwise was probable cause for the prosecution. Innocence is not the point, but the corruption of the trial process is. In McDonough's majority opinion, joined by Justices Kavanaugh and Alito, the court stated six times it was accepting the Second Circuit's formulation of an evidence fabrication claim. The court reaffirmed Heck's accrual rule, but extended it to cases that did not result in a conviction, but for exactly the same limited reasons, to avoid parallel litigation, inconsistent results, and end runs around habeas corpus. The specific holding in McDonough is important. The court stated, quote, only once the criminal proceeding has ended in the defendant's favor or a resulting conviction has been invalidated within the meeting of Heck, citing 512 U.S. at 486 to 487, will the statute of limitations begin to run. That citation is to Heck's requirement that the conviction has been reversed on direct appeal or otherwise invalidated with no reference to innocence. Under that holding, Smalls' claim accrued, and he was entitled to sue. Nowhere in Heck and nowhere in McDonough does the court ever state that a showing of innocence must be made before an evidence fabrication claim will accrue. Both the Seventh Circuit and Beck... The court does say in McDonough that we're going to come up with a favorable termination requirement by analogy to a claim for malicious prosecution, and we know what favorable termination means in that context, so why shouldn't we understand that to mean it's the same sort of favorable termination requirement we would have in a malicious prosecution claim? Because the court went on to discuss at length, as it did in Heck, that the substantive elements of the claim requires a different analysis than the analysis of when the claim accrues under Section 1983. Judges Sack and Kaplan recognized this in Thompson v. Rovella, an unreported case, but relying on Spack v. Phillips, which is a reported case in this circuit, to distinguish favorable termination as a substantive element and a Heck accrual requirement, even in a malicious prosecution case. In that case, the panel held that there was accrual under Heck when the conviction was vacated, even though there was not an indication of innocence, and when an indication of innocence came later, it was too late to sue. So if the distinction is present in malicious prosecution, it's certainly present when you're the elements of an evidence fabrication claim. Well, the court in McDonough describes malicious prosecution as impugning the conviction, right? And then the court says, well, just like that, in this kind of a case, the fabrication case, you're impugning the prosecution. And so doesn't that suggest that the same interests are at play with respect to the termination? Well, it uses impugning as part of its discussion of a civil claim that is necessarily inconsistent. That's the key phrase, necessarily inconsistent with the judgment of a state court. That's the Federalist concern, that the claim not be necessarily inconsistent. And in this case, there's no judgment that our claim is necessarily inconsistent with. The judgment was vacated. The jury's verdict was known and void. There is an inconsistency, right? Because in order to get the dismissal for an improper seizure, your client had to say that he possessed the guns, right? And this claim is based on the idea that he never possessed the guns. Why isn't that inconsistency enough to say that the policy in HECC of avoiding inconsistent judgments is implicated here? Because there's no inconsistency between the claim and the result and any judgment by the state court. There's never been a decision under HECC, not HECC, none of the later Supreme Court decisions, no appellate decision that I'm aware of that has ever said that where there's an inconsistency between a civil claim and a statement made by a defendant or his attorney that that bars the civil claim. The attorney explained and actually testified at the civil trial in this case that he was merely referring to the criminal court complaint and the police officer's allegations about the events leading to the arrest in order to establish standing. In a sense, I think what Your Honor is really getting at is a different issue than HECC analysis. I mean, just recently in the Frost case, this court held that even where the essential plaintiff's witness gave extremely inconsistent prior accounts of the alleged police coercion that led to fabricated evidence, that the claim must be allowed to proceed. The Jeffries case, the circuit's decision in Jeffries, is the only decision out of probably a couple of dozen cases where the circuit has discussed the problem of a plaintiff's prior statement being inconsistent with his claim. And in the Frost case, the court made clear that a Jeffries motion to dismiss will only be granted if the prior inconsistent statements by a plaintiff make his claim so unbelievable that no reasonable jury could believe them. That's a completely different analysis than a HECC analysis, which under federalist principles is trying to avoid an inconsistency between a federal civil rights claim and an existing state court judgment. I think Your Honor may also be, I mean, the defendants are also arguing what's in effect judicial estoppel, that there's somehow some unfairness to them where here the defense attorney made a statement in a pretrial affirmation and that appears facially to be inconsistent with the civil claim. Well, it's more than a pretrial affirmation, right? The disposition of his case as saying that he was subject to an unreasonable search assumed that his property was seized. And so the claim that he never in fact had the property is just inconsistent with that judgment. No, Your Honor, I think that the appellate division decision is essentially that the stop was unlawful, that there wasn't reasonable suspicion for the stop, and that all evidence that was seized or observed as a consequence of the stop had to be suppressed. It wasn't essential to that decision that the defendant possessed a gun, merely that he was stopped without reasonable suspicion. So if the fact patterns were different, if he had said that it was his property and that was essential to the judgment, would that be a different case? No, I think the result would be the same because there's no judgment of the state tribunal that the civil claim is inconsistent with. That's a subsidiary or a subsidiary fact that under Your Honor's hypothetical is part of the court's, I guess is a premise for the court's decision, but it doesn't mean that there's any federalist concern with a civil rights claim that is not inconsistent with the result of that case, which is a dismissal. The other thing is that I think that there's a logical problem and a problem with where you draw the line with the defendant's position. In this case, the only evidence of guilt was the officer's claim that my client possessed a gun. And because there was no other evidence, when the appellate division found that that evidence had to be suppressed, it dismissed the case. Well, what if this is a case where there was other evidence of guilt and that the appellate division reversed but remanded for a new trial, and then the defendant was acquitted at that new trial? Under the defendant's view, apparently, and the lower court's view, that would be an acquittal, and then the defendant could sue. But in that case, there would be more evidence of guilt than there is in our case, where the only evidence is the allegedly fabricated evidence. It just makes no sense. As the amici point out, 12 public interest organizations, ranging from the NACDL and the ACLU to the Cato Institute and the Prosecution Center at NYU Law School, our criminal justice system is not set up to make findings of innocence. Juries are instructed to find whether or not there's reasonable doubt. Even though in malicious prosecution, we assume that an acquittal is an indication of innocence. Well, we do in a malicious prosecution context decide whether something indicates innocence. So it's not as if it's available to us to say that that is not a legitimate inquiry for courts to make. Well, that's because the purpose of malicious prosecution is to redress a prosecution that started without minimally sufficient evidence. The purpose of an evidence fabrication is to redress the perversion of the process through the fabrication of evidence. I think I have an argument. Can I just ask before I close, do either of my colleagues have questions? Yes, of course. Thank you. No. OK, well, then we're going to hear from you again on rebuttal. So let's you know, before you go, it would help me. This is out of left field, but it would help me if you could explain how these two cases, this one and Daniel, came to be. Even though they're from different districts, how they came to be argued in tandem. Well, because they have the similar issue. Who picked it up? Did you ask them to do it? Did the clerk's office pick it up? How did it happen? We made a motion to have the arguments on the same day. That's what I wanted to know. Thank you. OK. I'm sorry. No, I'm finished. Mr. Rudin, you cited a case. I think it was Thomas against Favela. Yes. It's 734. F. A. P. P. X. At 787. Page 790. 2018. And that case sites SPAC. S. P. A. K. V. Phillips. 857. F. 3rd. 458. Thank you. Welcome. OK. If there are no more questions, we'll hear from you on rebuttal. Mr. Moore. Thank you.          Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. John more on behalf of the FLEs. The court has faced this morning with two cases. Presenting distinct questions as to how to interpret the recent Supreme Court decision and McDonough versus Smith. In this case. I just claim that the evidence supporting his state criminal conviction was entirely the product of police fabrication. If allowed to proceed. Would impugn the explicit and implicit assumptions underlying every aspect of the state criminal proceedings against him, including the order overruling his conviction. A federal judgment giving credence to such a claim runs contrary to the Supreme court's reasoning, McDonough, as well as traditional concerns with comedy and federalism. And McDonough, the Supreme court made clear that a federal civil plaintiff claiming that evidence was fabricated against him in his state criminal proceedings. As a complete and present cause of action. Only once the criminal proceedings against him terminated in his favor. In reaching that conclusion, the court made clear that it was concerned with the need to avoid a result that challenges the integrity of state criminal prosecutions. Plenty of attempts to morph that focus into one only concerned with accident state convictions. But if that is what the court wanted to say, it could have just done stuff. Instead, it's reasoning suggests a more nuanced position. Given the court's reasoning, the district court correctly found that plaintiff's claim cannot survive the favorable termination standard. Plaintiff's conviction for possessing the gun was overturned only because the evidence of that gun was suppressed as the fruit of an improper pursuit under state law. His claim that in fact he never had a gun at all is contrary to the explicit state verdict that he criminally possessed a weapon and the reasoning of the decision overturning that conviction. But there was an. It's inconsistent with a state determination that he did possess the weapon. Is that what you said? Correct. The criminal verdict against him, which was overturned. I acknowledge that the reason of that overturning was based on the idea that there actually was a gun to be suppressed. And moreover, that it ought to be suppressed based on the reason on an improper pursuit that plaintiff now claims never happened either. There's no question that there's no question that this was a favorable termination for purposes of. You agree. I disagree. Largely in reliance on the. On the court's reasoning in the de Blasio and Poven to decisions, which say that in the context of malicious prosecution, which is in McDonough, the court said is analogous to what we're dealing with here. Is it. That's the question. Is it. But go ahead. Right. Yeah. So I realize I'm assuming that Larry, do you accept my argument as to the favorable termination aspect? With that in mind, given Poven to and de Blasio, the favorable termination standard would apply to HEC as well. And so, no, I don't think HEC has been satisfied in the particular context of this case. Because you're saying that the particular context of this case is very close to a malicious prosecution. Is that the argument? Yes. If there was a closer analog, it would be a different result. But I guess I have this question, which is, you know, we have said that the malicious prosecution claim is for a violation of the fourth amendment. And the reason we have the favorable termination requirement indicating innocence is because unless you demonstrate innocence, we can't say that the seizure associated with the prosecution was reasonable. And there was an argument at one time that maybe a fabrication of evidence claim is a fourth amendment claim, but our court has pretty squarely rejected that. Right. So if we are proceeding under the fifth amendment, what in the language of the fifth amendment, the same way the unreasonable seizure language in the fourth amendment would require a termination indicating innocence. I think that what I would turn the court's attention to the reason that the Supreme court employed in McDonough and particularly on page 2158, the court wrote that evidence fabrication claims challenged the validity of the criminal proceedings in the same manner as the plaintiff in HEC challenged the validity of his conviction. And so McDonough was concerned, not just with results, but was concerned with the process and said that both malicious prosecution and criminal and evidence fabrication claims at bottom challenged the integrity of criminal prosecutions undertaken pursuant to legal process. So the court was very clear that it found that the constitutional issues implicated at bottom, regardless of which amendment the claim arises under are essentially the same. And that's why it indicated that like malicious prosecution, there ought to be a favorable. So you're saying there's a kind of freestanding constitutional principle that whenever you're challenging the integrity of a criminal process, you need to show a termination indicating innocence. Is that right? I guess I don't know if I would say if I go quite as broadly as that, without a little more thought, but I would say that in cases like this where the entirety of the criminal proceedings is undermined by this evidence fabrication claim, that the concerns expressed in McDonough indicate that it has, there has to be a favorable termination, which we argue has to be indicative of innocence in the same way that a malicious prosecution claim would be because malicious prosecution, likewise undermines the entirety of the criminal procedure. Okay. I understand. I understand that point. I guess I just ask you to the extent that, you know, we have said that the requirement of a termination indicating innocence was required by the reasonableness requirement of the fourth amendment. Is there a fifth amendment principle that is analogous that would require a similar termination requirements, or we have to advert to this general principle you're saying we should get from McDonough? I think I, nothing comes to mind specifically from the fifth amendment, but I think that the broader concern of respect for subsequent judgment or for rather than subsequent judgments, but concurrent judgments from state and criminal proceedings, the desire and need not to impugn those very processes is, is what leads to the same result, whether that's grounded in the fourth or fifth amendment. If you're found guilty, can you still bring a fabricated evidence claim? I don't believe so. Under McDonough, McDonough indicates that there has to be a favorable termination. And you would apply that in a case where the fabrication went to, for example, drug quantity which could trigger. And in fact, in the case I'm hypothesizing, it trigger a mandatory minimum that otherwise would be inapplicable. So the concern there would be the issue of sentencing as opposed to underlying guilt. That's what I'm trying to say in the hypothetical. I think that, I think that presents a much closer question in the case here, because there you are not undermining the entirety of the criminal proceeding. You're ultimately undermining, or impugning one particular aspect of it here. How could you possibly say that a cop getting on a stand and lying about the weight of drugs recovered in order to stick it to the defendant on sentencing doesn't impugn the entire proceeding? Fair enough, Your Honor. So perhaps I was imprecise in my, in my language. The point that I would like to make, that I'm trying to make is that there is still an aspect of guilt that independent of the particular amount that, that indicates the degree of guilt degree of sentencing. Here, the, the, we're talking the difference. It's a very binary choice between guilt or innocence and where the all, every aspect of this proceeding, again, including the, the decision overturning the conviction assumes the factual guilt based on facts that plaintiff now claims never happened to say that all of that is thrown out or all of that was improperly decided. None of it existed as a matter of, for this federal decision, that impugned every single aspect of the prosecution in a way that is even more pronounced than would be in the case of somebody exaggerating or increasing falsely. You seem to agree that if all we had was heck versus Humphrey and the Supreme Court and McDonough, then he could proceed because there isn't an existing, there wouldn't be an existing conviction. Is that right? I think that, I think that, that might, that would be right. Only because without McDonough, the, that analogy to Poventute and de Blasio wouldn't hold as strongly. But given that McDonough told us that the favorable termination requirement was not just a question as to whether there was an outstanding conviction, but now was about whether it was a conviction indicating innocence. But, but McDonough, when it talks about a favorable termination sites heck versus Humphrey over and over again and talks about a termination within the meaning of heck. So what in McDonough tells us that it adopted this different rule? I think that the, I mean, the plaintiff's argument is essentially that there are, there's a conviction and there's not, and as long as there's not a conviction, then, then heck is satisfied. And in the case can proceed. And I just think that that is inconsistent with the court's reasoning, for instance, indicating that the court wasn't going to address the, the variety of ways that a conviction could be, or rather termination, could be favorable saying it was a context specific analysis, indicating further that in doing that context, that it recognized the prosecutor's power both to grant please, but also to dismiss charges, which undercuts plaintiff's argument. Well, it's actually even convictions could count. And so if the court wanted to say, look, conviction is all that count. It's the only thing that's unfavorable. And of course the rule from heck applies. It could have saved itself a lot of trouble. And the fact that it didn't do so I think indicates that the court had something more in mind. But there was an acquittal in McDonough, right? That is correct. Your honor. And that's why the court didn't ultimately address whatever the court said in some language to which you refer is really entirely different. Isn't it? I think that the analogy that was drawn to malicious prosecution claims and the concern that the court had with, with addressing criminal proceedings, not just criminal convictions, I think go that, that reasoning goes to the holding. I think that that is part of it. I agree. It's not the central sentence that you, that you would point to if this was a law school class, but I think the reasoning is persuasive and is part of that, of course. But again, when you told me, you told me just a moment ago that heck versus Humphrey on its own, would not establish the sort of favorable termination requirement you're talking about here. Heck versus Humphrey is all about an analogy to a malicious prosecution claim, right? So, so why is analogizing to malicious prosecution and heck versus Humphrey does not establish the termination showing innocence requirements. But then they do the same thing in McDonough and all of a sudden it does establish that requirement. Because McDonough was concerned not just with the, an extant conviction, the way Humphrey, the way heck versus Humphrey was. McDonough was concerned with the process itself, with it, with the conduct of the prosecution, which I think is a new feature that was not present in heck. I see. So you're saying, so whereas heck versus Humphrey told us that there needs to be some kind of expungement or overturning of a conviction after McDonough, that sort of requirement applies not just to a conviction, but to a prosecution. So we have to look for some kind of indication that the prosecution was illegitimate. Is that, is that the argument? That that's my reading of McDonough. Yes, Your Honor. What, what, what, what would, what would that look like? Would that, that would require what the prosecutor, if the prosecution just dismissed the charges or if it was dismissed for lack of substantial, like what, what kind of, what can we look at that would show an invalid prosecution the way we can look at an overturned judgment to look at an invent, to find an invalid conviction? What does it look like in the prosecution context? The court would look to the same features that it does when, when making that determination for malicious prosecution cases. And so again, we're urging that. Oh, you're saying you're saying the same, the same sort of standard. Right. But, but of course, if you're extending the heck rule then to claims that challenge a prosecution and you're telling me the heck rule just requires there not to be an existing conviction, then for claims that challenge or that impugn a prosecution, wouldn't the rule just be that there can't be an existing conviction? I understand maybe heck wouldn't apply without McDonough, but if we're applying heck, it doesn't tell us that there needs to be a termination indicating innocence. It just tells us that there needs to be a lack of a conviction. That's, that's correct, Your Honor, that, that heck, if heck were the only thing that we had here, then this would, this would be a different case. But I think that the holding and reasoning of McDonough indicate that we're in, into a different domain. The effect of the rule you're arguing for would insulate enormous range of police misconduct, wouldn't it? So it would make it more difficult for plaintiffs to bring these claims in the same way that the, that the standard for malicious prosecution claims does. And where there's not an argument, at least before the court right now, that the standard is overly burdensome for malicious prosecution cases. We would urge that the same standard would not be overly burdensome for plaintiffs in these evidence fabrication cases. Well, we'll leave it at that. Okay. Okay. I guess we're going to, we're going to, we're going to hear from you again in the next, do you have one final thing to say? I just wanted to briefly address plaintiff's citations to the Thompson SPAC decisions, which were not in the briefs. What SPAC was very focused on was that there, in the indicating that there might be a different favorable termination standard for accrual versus elements. I mean, Your Honor, we agree that that conceivably could happen, but I don't see that it gets plaintiff very far here. Particularly because SPAC held that accrual is a matter of federal law while the court looks to the state for elements. But in Lanyon, the court made clear that while the state's definition of elements may be a separate and applied federal common law to those elements. So federal, the federal common law rule here is the landing standard. And to the extent that plaintiff is arguing that that might be the accrual rule also, I think that that aids our position as opposed to his. Okay. Thank you very much, Mr. Rudin. You have two minutes for rebuttal. Mr. Rudin. I'm sorry. I was muted. Of course, in the McDonough decision, the Supreme Court continually notes the distinction on the second circuit law between the elements of evidence fabrication and malicious prosecution. And it continually notes that determining an accrual rule by analogy to, to common law is not a one-on-one matching exercise with determining the elements of the substantive claim. I would reiterate, and I think that the defendants just can't escape this. McDonough's holding is only once the criminal proceeding has ended in the defendant's favor or a resulting conviction has been invalidated within, within the meaning of HEC, will the statute of limitations begin to run. No question that our case was invalidated within the meaning of HEC. The Supreme Court further pointed out, as I mentioned before, I counted I think it's six times that it was not questioning the second circuit's formulation of an evidence fabrication claim in which there's no requirement of any showing of innocence. So essentially, the defendants are taking out of context. You think it makes a difference? I mean, so the, the government was just saying that whether it's under the fourth amendment or the fifth amendment, the same interests are implicated here. Do you think it makes a difference that the fabrication claim is under the fifth amendment and the malicious prosecution claim is under the fourth amendment? I think that, that there is a due process argument here, a claim that's distinct from a fourth amendment claim. And the due process argument goes to the procedure that was used, the use of fabricated evidence, just a different purpose and concern than a fourth amendment concern with a probable cause. The fourth amendment claim is also about a corrupted procedure, right? It's the idea that the, that the seizure was not justified by probable cause. So if you're saying that the prosecution was not justified by a genuine evidence, it doesn't, isn't that the same or the same interest implicated? No, the, the, the interest underlying a fourth amendment claim for lack of probable cause is taking away someone's liberty without, without a minimally sufficient basis. And the, the due process claim is, is whether there's a minimally sufficient basis or not, it's taking away someone's liberty based upon fabricated evidence. These are different as the second circuit has continually pointed out, these are different concerns. But, you know, to the extent that there's an overlap between the elements of malicious prosecution, common law elements of malicious prosecution, and the heck accrual rule, then, I can understand why courts generally look for an indication of innocence before a malicious prosecution claim will accrue. Otherwise I pointed out before Thompson v. Mack, but we're talking now about a claim that's, that's based upon the perversion of the process. The vast majority of criminal convictions that are reversed on appeal are reversed for procedural violations. The number of cases where the New York state appellate courts find legally insufficient evidence, or even where they're reversed because the convictions against the weight of the evidence is extremely small. So basically the defendant's position would be to exclude 95%, if not more of the cases reversed by the state courts from 1983, which is supposed to be a broad statute that provides a remedy against every person who violates the constitutional rights of an individual. Thank you very much. If there's no more questions from my colleagues, I think the case is submitted.